UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JOSE PEREZ LUNA,

     Petitioner,

v.

MARKWAYNE MULLIN, et al.,[1]

     Respondents.

No. 1:26-CV-045-H

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Jose Perez Luna, a native and citizen of Venezuela, is one such alien, having illegally entered the United States several years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA, the Due Process and Ex Post Facto Clauses, and the Administrative Procedure Act.

*Buenrostro-Mendez* forecloses Perez Luna's statutory claim. The Court considers each of his remaining claims in turn and finds them unpersuasive. Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that

---

[1] Markwayne Mullin replaced Kristi Noem as Secretary of Homeland Security on March 26, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

## 1.    Background

Perez Luna is a native and citizen of Venezuela. Dkt. No. 1-5 at 1. In November 2021, he attempted to enter the United States at or near Eagle Pass, Texas. *Id.* He was apprehended. *Id.* But his entry happened during "a wave of illegal entries" across the U.S.-Mexico border and amid a severe "lack of space to hold detainees." *Goyo Martinez v. Noem*, No. 1:25-CV-256, 2026 WL 114418, at *1 (N.D. Tex. Jan. 30, 2026). So ICE released him into the United States on his own recognizance under Form I-220A. Dkt. No. 1 ¶ 42; Dkt. No. 1-4 at 3.[2]

Upon arriving in the United States, Perez Luna was placed into removal proceedings. *See* Dkt. No. 1-5 at 1. A Notice to Appear charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i).

On December 4, 2025, ICE detained Perez Luna. Dkt. No. 1 ¶ 45. He is currently detained at the Bluebonnet Detention Facility in Anson, Texas. *Id.* ¶ 46. After being detained, he asked an immigration judge to consider his detention and the possibility of bond. *Id.* ¶ 11. The IJ has not yet done so and will almost certainly deny any such request

---

[2] Venezuelan nationals in the United States were previously permitted to remain with Temporary Protective Status. The Northern District of California enjoined the Trump Administration's termination of Temporary Protective Status for Venezuelan nationals, but the Supreme Court subsequently stayed the injunction. *Noem v. Nat'l TPS All.*, 606 U.S. ___, 146 S. Ct. 23 (2025). In January 2026, the Ninth Circuit affirmed the Northern District's decision. *See* 166 F.4th 739 (9th Cir. 2026). But because the Supreme Court's stay remains in place until the "disposition of a petition for a writ of certiorari, if such writ is timely sought," the stay is active. 146 S. Ct. at 24.

because of the BIA's recent decision in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[3]

Perez Luna filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states five claims for relief. First, Perez Luna alleges that his detention without bond violates the INA. *Id.* ¶¶ 128–34. Second, and relatedly, he contends that his detention without bond violates the APA. *Id.* ¶¶ 110–11. Third, he seeks relief as a member of the purported class action certified in *Maldonado Bautista v. Santacruz. Id.* ¶¶ 91–100; *see* No. 5:25-CV-1873 (C.D. Cal.). Fourth, he argues that his detention violates the Due Process Clause's rights to substantive and procedural due process. *Id.* ¶¶ 120–27. Finally, he argues that his detention violates the Constitution's prohibition on retroactive laws under the Ex Post Facto and Due Process Clauses. *Id.* ¶¶ 71–80.[4]

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

---

[3] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). Moreover, in a March 6 order, the Ninth Circuit stayed the Central District's purported vacatur pending a ruling on the government's emergency motion for a stay pending appeal. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 2 (9th Cir. Mar. 6, 2026). *Yajure Hurtado* therefore continues to bind immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Lopez Galvan's petition does not present an exhaustion problem. *Id.*

[4] Perez Luna's *Maldonado Bautista*, APA, and retroactivity claims are not presented as formal claims or listed in his prayer for relief but are fully briefed in the petition.

Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Perez Luna raises multiple claims in his habeas petition resting upon the INA, the APA, the California class-action orders in *Maldonado Bautista*, and the Due Process and Ex Post Facto Clauses.  The Court has considered each of these issues in numerous prior cases.[5]  Even so, the Court considers the arguments raised in Perez Luna's briefing to address whether his detention without bond violates the laws or Constitution of the United States.  The answer is no.

### A.    *Buenrostro-Mendez* forecloses Perez Luna's INA and APA claims.

Perez Luna is an "applicant for admission" within the meaning of Section 1225(a)(1).  Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Perez Luna is an "alien."  He is "present in the United States."  And he "has

---

[5] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez*, 2026 WL 114418; *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, his INA claim fails.[6]

Perez Luna also challenges his detention as an unlawful agency action in violation of the APA. *See* Dkt. No. 1 ¶¶ 110–11. But because *Buenrostro-Mendez* determined that DHS has the correct view of the law, his APA claim necessarily fails, too.[7]

**B.      The *Maldonado Bautista* class action is not binding on this Court.**

Next is Perez Luna's contention that he is entitled to relief as a member of the *Maldonado Bautista* Bond Eligible Class. Dkt. No. 1 ¶¶ 91–100. But the Court is not required to resist Fifth Circuit precedent to adopt the *Maldonado Bautista* class action. On March 6, 2026, the Ninth Circuit issued an administrative stay limiting the purported class-wide declaratory relief issued in that case to the Central District of California only. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 1 (9th Cir. Mar. 6, 2026). The Central District's February 18 order, which purports to vacate *Yajure Hurtado*, was also stayed. *Id.* at 2. Both orders are stayed pending a ruling on the respondent-appellants' emergency motion for a stay pending appeal. *Id.* at 1–2. At this time, there is no assertion that the Central District's orders can have preclusive effect on this Court. And even if the

---

[6] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.5.

[7] Furthermore, for the reasons explained in *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *10 (N.D. Tex. Jan. 9, 2026), the availability of habeas relief precludes APA relief.

stay were lifted, the Court would deny Perez Luna's claim for the reasons articulated in its prior decision in *Calderon Lopez*, 2025 WL 3683918, at *10–14.

### C. The Due Process Clause does not require the government to give Perez Luna a bond hearing.

Next is Perez Luna's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. He asserts that his detention without bond violates both his substantive and procedural due process rights. *See* Dkt. No. 1 ¶ 37. But on either approach, Perez Luna is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect

of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

Perez Luna's procedural due process claim fares no better. He seeks relief relying on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶¶ 85–90. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege

– 7 –

and [have] no constitutional rights." *Id.*; *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted).  Critically, aliens who are released into the United States pending removal are "treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139.

As an "applicant for admission," Perez Luna has "only those rights regarding admission that Congress has provided by statute." *Id.*; *Landon*, 459 U.S. at 32.  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297.  No part of the statute "says anything whatsoever about bond hearings." *Id.*  Accordingly, Perez Luna is not entitled to a bond hearing as a matter of procedural due process.

### D.    Perez Luna's retroactivity claim fails.

Finally, Perez Luna challenges the mandatory-detention policy as impermissibly retroactive.  His claim mentions both the Ex Post Facto Clause, as well as the Fifth Circuit's opinion in *Monteon-Camargo v. Barr*, 918 F.3d 423 (5th Cir. 2019), which is a case arising under the Due Process Clause's prohibition against retroactive application of administrative rules.  Dkt. No. 1 ¶¶ 71, 74.

To the extent Perez Luna seeks relief under the Ex Post Facto Clause, that claim is frivolous.  An ex post facto law is one of several legislative acts that have one feature in common: they are retroactive. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (citing *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)).  Retroactivity only governs the application of

a "measure to [an act] already consummated." *Lindsey v. Washington*, 301 U.S. 397, 401 (1937). ICE detained Perez Luna on December 4, 2025. Dkt. No. 1 ¶ 45. He did not file his bond request until after that date. *Id.* ¶ 11. The policies challenged here—the DHS Memorandum and *Yajure Hurtado*—were implemented and decided in early July 2025 and on September 5, 2025, respectively. *See infra* n.8; 29 I. & N. Dec. at 220. On the date of his detention, Perez Luna was in the United States illegally. And the detention policy on the day of his detention is the same one in place now.

And to the extent Perez Luna urges that retroactive application violates due process, his argument fails. In *Monteon-Camargo*, the Fifth Circuit held that when a court decides whether to apply retroactively a case of first impression, the court must "balance the ills of retroactivity against the disadvantages of prospectivity." *Id.* at 430 (internal alteration omitted) (quoting *Microcomputer Tech. Inst. v. Riley*, 139 F.3d 1044, 1050 (5th Cir. 1998)). "If that mischief [of prospectivity] is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). But "[u]njustified 'reliance' is no bar to retroactivity." *Solem v. Stumes*, 465 U.S. 638, 646 (1984). And the Supreme Court has been disinclined "to limit the effect of a decision that has been 'distinctly foreshadowed.'" *Id.* (quoting *Brown v. Louisiana*, 447 U.S. 323, 336 (1980)).

*Monteon-Camargo* is an instructive case for this retroactivity balancing test. There, the petitioner sought the Fifth Circuit's review of a final order of removal by the BIA. 918 F.3d at 426–27. The BIA determined that the petitioner was ineligible for cancellation of removal due to his conviction for attempted theft based on one of its decisions rendered nearly a decade after the predicate offense occurred. *Id.* That decision was *Matter of Diaz-*

*Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), which announced that a theft offense is a crime involving moral turpitude (CIMT) if committed under certain circumstances. *Monteon-Camargo*, 918 F.3d at 427. This expansion of the definition of a CIMT was significant because Congress left the term "moral turpitude" undefined; the task of interpretation was left to the BIA. *Id.* at 428. So the addition of "an entirely new category of theft offenses to those considered CIMTs" constituted a truly novel expansion of a statutory term. *Id.* at 431.

Multiple considerations led the Fifth Circuit to hold that retroactive application should not occur. First, criminal defendants may have pled guilty to "crimes that they rightly thought, based on the [BIA's] prior position, did not constitute CIMTs." *Id.* at 430. Accordingly, retroactive application of the rule would "compromise the familiar due process considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 430–31 (citation modified). Second, the change was "significant" and "drastically chang[ed] the landscape" by adding "an entirely new category of theft offenses to those considered CIMTs." *Id.* at 431. In view of these serious disadvantages, the Fifth Circuit held that the retroactive application of the rule announced in *Diaz-Lizarraga* was impermissible. *Id.*

But these considerations do not apply here. First, there are few, if any, reliance interests implicated. In *Monteon-Camargo*, the Fifth Circuit appropriately weighed the interests of aliens who pled guilty to theft offenses in reliance on the pre-*Diaz-Lizarraga* status quo, under which such offenses were not deemed CIMTs. *Id.* at 430. But even under the more permissive policies of prior administrations, the availability of bond was never such a certainty. Indeed, Section 1226 authorizes the Attorney General, in her discretion, to "continue to detain [an] arrested alien" or "release the alien" on bond or parole. 8 U.S.C. § 1226(a)(1)–(2). This "discretionary judgment . . . shall not be subject to [judicial] review,"

and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien." § 1226(e). Before *Diaz-Lizarraga*, there was a steady principle. Here, the status quo ante was unreviewable discretion.

More to the point, the notion that aliens choose to enter and remain in this country illegally in reliance on a set of laws that "have been described as second only to the Internal Revenue Code in complexity" strains credulity. *United States v. Texas*, 719 F. Supp. 3d 640, 666 (W.D. Tex. 2024) (internal quotation marks omitted); *see* Dkt. No. 1 at 15. Consider the following: The Fifth Circuit's concern in *Monteon-Camargo* was the petitioner's decision to plead guilty—a choice the Constitution requires to be "voluntary, knowing, and intelligent" after being "instructed in open court on the nature of the charge to which the plea is offered." *United States v. Diaz*, 989 F.3d 390, 393 (5th Cir. 2021) (internal quotation marks omitted). Because "[a] guilty plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts," *id.* (internal quotation marks omitted), the retroactive application of the BIA's decision struck at the heart of due process.

Not so here. Because "[b]eing found in the United States illegally is a continuing offense that . . . continues until the defendant is found," *United States v. Hernandez-Flores*, 460 F. App'x 434, 435 (5th Cir. 2012) (citing *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996)), the Court is unpersuaded that Perez Luna's detention without bond implicates similar retroactivity concerns. Perez Luna entered the country several years ago. Dkt. No. 1-5 at 1. While Perez Luna resided in the country illegally, one immigration court began denying bond hearings based on the same construction of Section 1225(b)(2)(A) at issue here. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1306–07 (W.D. Wash. 2025). Particularly over the last year, the executive branch has publicly signaled its intent to

– 11 –

exercise its full authority in enforcing immigration law.[8]  Each day that Perez Luna remained in the country was a continuation of his offense—all while the federal immigration-enforcement landscape changed.  He cannot now "turn back the clock to a time when [a bond hearing] was available as a matter of practice."  *Goyo Martinez*, 2026 WL 114418, at *7 (citation modified).

Second, the Court is unpersuaded that the statutory construction adopted in *Yajure Hurtado* and *Buenrostro-Mendez* presents a change materially similar to the one in *Monteon-Camargo*.  The Supreme Court has, for more than a century, endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be in vain if those accused could not be held in custody . . . while arrangements were being made for their deportation.").  To be sure, the Supreme Court acknowledged in *Demore v. Kim* that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.

---

[8] Moreover, on July 8, 2025, DHS distributed an internal policy memorandum advising that it had "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission."  *See Zuniga v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-221, 2026 WL 3755126, at *6 (N.D. Tex. Dec. 29, 2025) (internal quotation marks omitted).  Twenty days later, immigrants'-rights advocates filed a class-action lawsuit to challenge the new policy.  *See Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 2670875 (C.D. Cal. July 28, 2025).  All of this transpired before Perez Luna's detention.

And as an "applicant for admission," Perez Luna has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see Landon* 459 U.S. at 32 ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). Those statutory rights have never categorically shielded any applicant for admission from detention. The decision to grant bond or parole is committed to the discretion of the Attorney General. *See* 8 U.S.C. § 1226(a); *Jennings*, 583 U.S. at 303. And the exercise of that discretion is not reviewable. *See* § 1226(e) (providing that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole").

These considerations make this case different from *Monteon-Camargo*. There, the BIA's decision was determinative of his right. Before *Diaz-Lizarraga*, the petitioner's offense was categorically excluded from the definition of a CIMT. 918 F.3d at 428. Afterwards, it was categorically *included. Id.* Before, he was eligible for cancellation of removal; afterwards, he was statutorily ineligible. *Id.* Here, in contrast, the permissibility of detention pending removal is long established.

The availability of judicial review only accentuates the point. The judicial review of judgments regarding the grant or denial of cancellation of removal is governed by a complex set of rules. Section 1252 of the INA strips courts of jurisdiction over judgments regarding the granting of cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B)(i). But another provision "restores jurisdiction to review 'questions of law.'" *Wilkinson v. Garland*, 601 U.S. 209, 218 (2024) (citing 8 U.S.C. § 1252(a)(2)(D)). And although "questions of fact

underlying denials of discretionary relief are unreviewable," "petitions raising mixed questions of law and fact are always reviewable as questions of law under [Section] 1252(a)(2)(D)." *Id.* at 218–19.

Compare this to the complete lack of judicial review of bond determinations. *See* § 1226(e). The pre-*Yajure Hurtado* and *Buenrostro-Mendez* status quo meant that aliens detained pursuant to Section 1226(a) could request a bond hearing, but the ultimate decision to grant or deny bond was subject to the IJ's unreviewable discretion. *Id.* Perez Luna's position is therefore quite different from that of the petitioner in *Monteon-Camargo*. Prior to *Diaz-Lizarraga*, that petitioner could apply for cancellation of removal, appeal an adverse determination to the BIA, and appeal an adverse BIA determination to the court of appeals. But the retroactive application of *Diaz-Lizarraga* meant that the petitioner was statutorily barred from seeking such relief at all. *See Monteon-Camargo*, 918 F.3d at 428; 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Thus, it is not impermissibly retroactive to apply the DHS policy announced in *Yajure Hurtado* and affirmed as binding in *Buenrostro-Mendez* to Perez Luna. The disadvantages of retroactive application identified in *Monteon-Camargo* are not present here. Accordingly, Perez Luna's retroactivity argument fails.

### 4.    Conclusion

In short, Perez Luna, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. The APA, Ex Post

Facto Clause, and Due Process Clause do not require a bond hearing in these circumstances.  Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.[9]

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on March 31, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[9] To the extent Perez Luna seeks preliminary injunctive relief to prevent his transfer (*see* Dkt. No. 3), the requested relief is denied as moot.